again today and at the federal courthouse and we appreciate Judge Rosenthal sharing her courtroom with us today. We also welcome the students who are here and the members of the public and of course attorneys and parties and we also welcome today the Garland Walker Inn of Court and the Federal Bar Association. We believe it's important for the rule of law to be able to see court proceedings. That's why we have open courts and to participate in the process and that it gives us all confidence in the system and hopefully we won't do anything today that hurts your confidence in the system. We're going to call the first case for today. I'm very pleased to sit with my long-time colleagues, Judge Higginbotham and Judge Graves who have come to town for this argument. And we'll hear the first case, 2025-6022 for Diana Kuzmina v. Pamela Bondi. We'll hear from Ms. Mackens. Good morning. May it please the court, Mackens on behalf of the petitioner Diana Kuzmina, Your Honors, I'd like to reserve five minutes of time for rebuttal. I would also like to note for the record that Ms. Kuzmina's husband, Mr. Archul Mamukashvili, a granted asylee of the United States, is present in the courtroom today. This case presents three issues. First, whether this court should remand in light of the pending Form I-730 petition and the board's failure to properly account for the legal validity of Ms. Kuzmina's marriage and her statutory marriage. Counsel, you're going to need to keep your voice up with the up and down. You're going away from the mic and then back to it and away from it and back to it. So if you keep your voice up, you'll probably be fine. Thank you, Your Honor. I will try. I'm struggling with voice issues this morning, of course. I can speak louder if you want to. Yes, please speak as loudly as possible. Okay. We will let you know if we think you're yelling at us, but speak as loudly as you can. Okay. Thank you, Your Honor. I'll start over then with the issues presented. Yes, please. We can start your time again. Okay. Okay. Thank you. So this case presents three issues. First, whether this court should remand in light of the pending Form I-730 petition and the board's failure to properly account for the legal validity of Ms. Kuzmina's marriage and her statutory eligibility for derivative asylum. Second, whether the board mischaracterized derivative eligibility as a mere post-order equity rather than statutory spousal protection under the INA. And third, if the court allows, whether substantial evidence supports the adverse credibility finding. The record establishes that Ms. Kuzmina and Mr. Mamsukashvili were married in Tbilisi, Georgia in September 2023. The official Georgian marriage certificate confirms the place of marriage and reflects a formal civil registration. The confusion that arose during the early proceedings stemmed from Ms. Kuzmina's misunderstanding about whether a foreign or church marriage would be considered official for immigration purposes. She did not deny the ceremony occurred. There is no finding in this record that marriage was fraudulent or fabricated in any way. And notably, while detained in ICE custody, the couple solemnized their marriage again in Utah on May 13, 2025, to eliminate any doubt. That Utah ceremony confirmed their relationship. Ms. Matkins? Yes, Your Honor. If your petitioner's husband filed an I-730 petition on October 10th of last year, why was this just raised this week for the first time in this appeal on the eve of oral argument well after the briefing? Understood, Your Honor. We initially, within five days of the asylum grant, we filed motions at the board to reopen Ms. Kuzmina's removal proceedings. The board took many months before it denied the motion to reopen, and then we filed a second motion after the 730 was pending to the board to show them what applications or further relief were available. And only until last month in February 2026 did the board deny our final motion, which led us to filing the motion to remand before this court today. But wouldn't you have a proceeding going on about that denial, a separate proceeding going on about that denial? That's not part of this appeal, I mean, this petition. Yes. So have you, did you file something when that happened? When the board denied the initial motion to... No, with the court of appeals appealing that order from the board. No, Your Honor, not at this, not at that time, because... If you're too late, can you still file on it? An appeal on the denial that just happened in February?  No, Your Honor, we cannot file an appeal to this court for the BIA's... Not an appeal, but a petition for adjustment of status that they've erred in some way. Why is that part of this proceeding rather than some other proceeding? Because I think the board missed, it should be a part of this proceeding, Your Honor, because the board misapprehended the statutory significance of derivative asylum. And here, if there is a legal error, we're asking for this court to remand to allow the board to reevaluate and consider the petitioner's marriage and now the subsequent relief that's pending before USCIS, who has sole jurisdiction of that, which is the I-730, based on her husband's grant of asylum. But that's not the petition that you've come up here to us on. And so that's why... Why is it even appropriate for us to deal with that at all? Generally, yes, I understand that it's not appropriate here, but if the board misapprehended the statutory significance of the current posture of this case, we believe that remand is appropriate in this circumstance, Your Honor. Again, the marriage in Georgia predates the removal proceedings. The Utah ceremony predates her husband's asylum grant, and it predates the filing of the... And this asylum grant, sorry, predates the 730 filing. So this is not a post-order marriage or something that happened after the fact to manufacture relief. The petitioner, Ms. Kuzmina, is eligible for this relief, and the case should be remanded for that purpose. What authority do you have that would allow us to remand for purposes not argued in your petition? So the motion to remand that we filed with this court, we were given orders to be able to brief why the court should remand today. You were given orders to be ready to discuss it at oral argument.  So what authority would say that it would be appropriate for us to remand for a reason not in your briefs and not raised in your petition and raised after the fact in a motion? So I believe this petition was pending prior to her 730 pending. This came after the fact of when we were allowed to appeal and when her case moved to this posture before this court. Do you have a case from this circuit or any other that would allow us to do what you're asking us to do? I do not, Your Honor, but I don't have any citation at this moment. Moving on, unless the court has any additional questions about that issue, when the board initially denied our petition to reopen the petitioner's removal proceedings, the board characterized the situation as, quote, becoming potentially eligible for relief after a final order, but that framing overlooks the critical point that the marriage existed before the asylum grant and the only new event was the government's decision to grant asylum to her husband, an event entirely outside of Ms. Kuzmina's control. The case here is fundamentally different from cases involving self-created equities. And maybe to answer your question, Your Honor, in a little more detail, to my knowledge, the Fifth Circuit has not squarely addressed derivative asylum and reopening in this precise procedural posture, but this court, my argument is that this court does not need to resolve any broader potential split within the circuit. It need only hold that remand is appropriate here because a legally valid marriage preexisted the grant of asylum and a derivative petition is pending and it would undermine congressional intent for statutory family unity. Would you like to make your arguments that were raised in your brief about the inconsistent, whether or not statements are inconsistent? Yes, Your Honor. Going to the credibility issue, the petitioner understands that factual findings must be upheld unless the record compels the opposite conclusion, but this court has required that adverse credibility determinations be supported by specific and cogent reasons and that discrepancies identified by the immigration judge are peripheral and reconcilable. For example, Ms. Kuzmina stated that she stayed about one week in Mexico and then elsewhere in her testimony she describes staying one to two days in Mexico City and three to four days in Tijuana, but those statements are mathematically consistent. Her departure timeline from Russia was another issue before the immigration judge and it was clarified through her amendments and testimony in court. So are you denying that there were any inconsistencies? I believe there were inconsistencies, but I don't think they went to the heart of the case and I think that they were explainable in court through testimony and through the other evidence filed with the court. So we're acknowledging that there were inconsistencies, Your Honors. Well, let's go to those. What you were just telling me about is something that you're saying is not inconsistent, right? Correct. But it's the inconsistencies that doomed the petition. Let's talk about those. One inconsistency throughout her testimony and through the documentary evidence was her marriage status. She initially, when she was interviewed by an asylum officer, she said she was married and then in another point she said when she filled out her asylum application she said she was single, but she talked about her fiancé or partner in different terminology. All of that, our argument is that it concerns a legal classification and not a denial that the ceremony occurred or there was a significant other in her life. And so, again, that would be in our argument an explainable inconsistency that the judge used to deem her whole testimony and application not credible. I would note to the court that what remained consistent throughout the record were the core elements of her claim. She protested the war. She posted online in opposition of the war. She received threats and experienced intimidation in Georgia. In this case, the immigration judge elevated approximation into these contradictions and found her not credible. Substantial evidence review is deferential, your honors, but it's not a rubber stamp. And the record here does not compel a finding that she fabricated her persecution claim. For these reasons, we respectfully request that the petition be granted and the matter be remanded to the board for further proceedings consistent with the statutory derivative eligibility for asylum and then for a new hearing regarding her credibility. Thank you. I will reserve the rest of my time unless the court has additional questions. We do have additional questions. Did you have a question? Yes, I have one question going back to first principles. What's our standard of review of a credibility finding? That, to me, is a very high burden in this context. I understand, your honor. It's a substantial evidence. And here, though, we're asking that the court also has to find that there's specific and cogent reasons for a non-credible finding. And the record just doesn't compel that. The examples the judge gives are thoroughly explainable in the record and through the respondent's own testimony. And we'd ask that the court remand so that the respondent can clarify any other perceived inconsistencies through her testimony. Thank you. Could we hold the case in abeyance pending action in the other application? Yes, your honor. Yes, we can. However, the issue or the urgency is that the respondent is detained, and she has been detained in immigration custody since her arrival in the United States, so since 2023, and she's sitting in ICE custody. And so once the I-730 is approved, I don't even believe she can be removed because she'll be an asylee, and then she can file for adjustment of status. So there is that quid minor in the system, that she's sitting in ICE custody, waiting for this case to be resolved, and now subsequent relief, which is the I-730 based on her husband's grant. So if the case is held in abeyance. The remand, though, doesn't get her out of custody any quicker, does it? Correct, but the remand would at least allow her to litigate these issues that we believe were decided unfairly in her situation and could possibly allow her, if it's remanded for the credibility findings, it would allow her to be granted asylum on her own or withholding on her own separate from her husband's petition. Do you have anything that you wanted to say about her CAT petition or not? No, your honor. Okay. Thank you. Thank you. Thank you, your honors. We'll hear from Ms. Morgan. I want to make sure that the audio is okay. Good morning, your honors. I'm Carmel Morgan. I'm appearing on behalf of the respondent, the U.S. Attorney General. I think I probably should start out by addressing the recently filed motion, but if you would rather hear about it. No, please address the recently filed motion and whether it can be part of this case at all and whether we should hold this case in abeyance while those proceedings are adjudicated or whether we can deal with it here. What does the government say about the recently filed motion? Yes, your honor. The government opposes this motion. The word inappropriate was used earlier, and it is indeed inappropriate for this court to remand under the circumstances that are presented in the motion. Do you have any case law that would say that we can't remand on a basis not included in the petition? I can't think of anything. I mean, this was filed on Monday afternoon. Generally, the government would be given seven days to respond, and I was preparing to address what was briefed. Are you asking for an opportunity to file briefing on this issue? I don't think briefing is necessary. It seems to me what the petitioner is trying to do is to challenge her motions to reopen that were unsuccessful before the agency, and you can't do that here now. She can do that in other proceedings, though, right? Absolutely. She hasn't waived or forfeited her ability to challenge the reopening based upon her marriage. That's correct, your honor. The board, and again, this is new information, fairly new information to me, but the board on February 17th, I believe it was, issued an opinion denying her motion to reconsider the motion to reopen. That February 17th date would give her 30 days until March 17th, I think, to file a petition for review before this court. It is a separate matter, but that could be before this court if she chose to seek review. She could file a separate review before this court on the issue of reopening, whether the failure to reopen was against the law or should have been allowed for some reason. Absolutely correct. About the wedding, about the marriage. Yes, that's correct. In the meantime, what do we do? Just wait? I offered to file a joint motion to hold this in abeyance to await the decision on the I-730. We could not come to an agreement on that, and at this point I think it's unnecessary to wait. We're here today in court. It's been fully briefed, and the government would like to proceed on the brief. Does our determination on this issue about the credibility in her own application, does that in any way affect the other proceedings? I can't see that it does. The I-730 would trump a final removal order, but that's pending, and it's not a given that it will be approved. How long is it taking these days for those? I Googled that, believe it or not. I don't know that I would rely on that information. My best answer is I don't know, but the Internet said five to ten months. I think they are doing more in-person interviews, and particularly because she's in the United States, I think that they probably would want to interview her, and there has not been an interview scheduled to my knowledge, so I think it will be quite a bit longer. Are there proceedings ongoing about her detention? You know, we have many, many proceedings around the country about people being detained, so are there any proceedings about her being detained? I am unaware of any proceedings about her detention. And what is the basis of her detention at this point? I believe just simply she was entering without authorization. So what do you want us to do? The government would like a decision based on the issues that were briefed, the adverse credibility determination. And you want us to deny the petition for review? The government would like you to deny the petition for review, yes. I suppose we need to take our time doing that. If you took your time to do that. Sometimes we get very busy. That could happen. There's a lot of moving parts here and quite a bit that the petitioner wanted to speak about, which is completely outside of the record. If you didn't issue a decision quickly, that March 17th date is coming up, and she could appeal the agency's decisions relating to the validity of her marriage. Let's see if we hold a case too long. Sometimes the chief judge comes and prompts us to go ahead. So maybe that's not a problem here. In any event, can we talk about whether or not the alleged inconsistencies are actually significant enough to have made adverse credibility findings, you know, about whether she was in Mexico a week or a week and a half? Is that really a serious inconsistency that would have supported an adverse credibility finding? I think you have to look at the totality of the circumstances. That's how these cases are decided. And in isolation, you know, a minor discrepancy between whether she was in Mexico a week or a week and a half alone probably might not support an adverse credibility determination. But in this case, it's replete with inconsistencies. What do you think are the significant inconsistencies in this case? I think the top three are her failure to initially disclose that she returned to Russia during a time when she was supposedly under severe threat and in fear of her life. She went to take care of her mother or something in April? Is that what you're talking about? That's what I'm talking about, yes. She did ultimately disclose in an amended asylum application that she returned to Russia in April of 2024 to care for her sick mother. And when she was testifying in front of the immigration judge and was asked about her mother's illness, said she had back pain and varicose veins in her legs. And so she stayed in Russia for a week and went back to Georgia where she also apparently was in fear of her life. And when someone returns to a country where they have a severe fear, you begin to question whether that fear is genuine. During her testimony before the immigration judge, she was unclear on the date that she left Russia and amended her testimony. What were the other two? You said you had three big ones. Yeah. Whether anyone in her family had also protested or been threatened, or at least spoken out against the government of Russia. In her credible fear interview, she said that her grandfather had posted political opinions online and that there were threats associated with her grandfather. She didn't talk about that in her asylum application. She didn't talk about it in her declaration. And when the immigration judge asked her during her hearing if anyone in her family had spoken out initially, she said no. Then she said yes. She made a mistake. She forgot about her grandfather. She didn't think it was important. I mean, that is an explanation, but it's not one that the immigration judge is required to accept. What about the third one? The third one to me is her reasons for entering the United States at the time she did. Although it's not an issue in the case presently, there's a rule that has been litigated about circumvention of lawful pathways, and she could potentially be excused from the application of that if there was an urgent medical issue. And so during her credible fear interview, she was asked by the asylum officer about whether she had any medical issues, she and her husband, at the time they entered the United States, and she told the asylum officer no. And then later it comes out that she was desperately ill with her kidney disease, and so that is yet another, I think, major inconsistency. The petitioner mentioned whether the inconsistencies went to the core of her claim. That's no longer the rule. There used to be a rule that said inconsistencies needed to go to the heart of the claim. They do not now need to go to the heart of the claim. So you can have inconsistencies that are outside of the core claim and still an immigration judge could find under these circumstances. Right. But are you familiar with our case in Ngambolo 20-23 Westlaw 801-6701, where we've said, though, that minor inconsistencies that we say it's a rare case when we reverse an adverse credibility determination, but we have done so where the alleged discrepancies are not actual discrepancies, and we noted that such minor discrepancies in identity documents, possible typographical errors and things, as well as several other minor ones would not rise to the level of an adverse credibility determination, and we've remanded back on that. Sure. It's a rare case where we have this authority where it's minor, it's not exactly clear that there are credibility issues. It could be read different ways or they seem minor, and we did send it back. And so how would you distinguish something like that? Just the sheer amount of inconsistencies here and the more concerning ones that I mentioned. They're well grounded in the record. They don't look like typos. It's not. They definitely are inconsistencies. It's not in the eye of the beholder or ambiguous. Is that your position? That is the government's position, yes, Your Honor. Okay. But then you conceded that there were some inconsistencies that were not supported by the record. Is that right? I conceded that there are some that are weaker than others and may not standing alone support an adverse credibility determination. And so how should it affect our analysis regarding an adverse credibility determination when you concede that there are inconsistencies that just aren't supported by the record? I want to be really careful. I don't think that's what I'm saying. Some are weaker than others, but I don't think there are some that don't support. But if they relied on some that you now concede are not supported by the record, that shouldn't affect how we analyze their adverse credibility determination? Yeah. I'm just saying I think that there are some inconsistencies that are weaker and standing alone would not support an adverse credibility determination. You're not saying they're not actual inconsistencies. You think they still are actual inconsistencies. You just think some of them are more minor than others.  Correct, Your Honor. And I used the example of the week to the week and a half. Whether how long she was in Mexico. Right. Okay. Or, you know, when she met her husband, was it really 2018 or 2019 when they met online or when they first started dating? I mean, alone perhaps it wouldn't support an adverse credibility determination, but in light of the entire case, I think it does. And like I said, the overwhelming nature of repeated inconsistencies, if you knocked out a few that were weaker, I think it's very clear that the decision would be the same by the fact finder here. Okay. Thank you. Did you have anything further? Not if you don't. We ask that you deny the petition for review. Okay. If there are no further questions. Thank you. We have your argument. We've saved time for rebuttal. Ms. Matkins. Thank you, Your Honors. Just a few brief points I'd like to discuss. First, with holding this case in abeyance for adjudication of the 730, it's true that I did communicate with government counsel about that. And the only reason why we elected not to file a joint motion before this court to hold the case in abeyance is because she is detained and the government refused or declined to ask for the I-730 to be expedited by USCIS, which is something that we're hoping for because she's been detained for so long in ICE custody. Is there any pending habeas or anything about her situation and what's the status of that? It's pending, Your Honor. It was just recently filed. We're hopeful that we'll have a decision. Where is that? Where is it pending? Yes. We hired local counsel where she's detained in Louisiana, and so we're hopeful that it's in process. But it has been filed by local counsel there. Which district is she in in Louisiana? I think she's in Pine Prairie, so I'm not sure what district. Also, Your Honor, I know that if the court was concerned about her detention and if this PFR is denied, what would the outcome be or what are we looking at here? Yes, we can file a new PFR here to this court based on the motion at the BIA, but also if this court denies the current PFR and then she is physically removed out of the United States, she would suffer irreparable harm when she is guaranteed the statutory relief that's pending before USCIS, which is in the 730, for derivative asylum status. So she would suffer irreparable harm in this case if this court were to deny the PFR before adjudication of the 730. And then, touching quickly on the three most significant issues that the government highlighted regarding her credibility issues, specifically with her timeline of going back to Russia, the petitioner corrected her testimony and provided a reasonable explanation regarding this inconsistency. She was not prompted by the court to bring up her grandfather at any point in the testimony, initially when she testified about political activism and her family in Russia. The court merely asked her a question a second time about her family, and she responded that her grandfather was speaking publicly against Russia and the government and then clarified with the court about any alleged inconsistency regarding family members. But she did go back to Russia. Correct. So she testified that she left Russia in April 2023, and then she later testified, upon clarification or questioning, she left Russia in June 2023, returned in April 2024 for about one week to help her mother, and then went back. So, I mean, you know, the detention setting where she is and the trauma that she's experienced, it seems reasonable that she could clarify her answers upon additional questioning, and then it's documented in the record through amended applications and through her declaration. She's not trying to hide any of these inconsistencies. And then finally, really quickly, regarding her health and the emergency, the government brought up the CLP bar, the bar to asylum, if you don't wait for a CBP-1 appointment upon entering the United States. I find it significant that her husband was granted asylum because the judge in that proceeding found she had, Ms. Kuzmina, the petitioner, had an exceptional circumstance to entering the United States because of her health condition, because of her kidneys and underlying conditions. So a judge in a separate proceeding found her to be an exception to the CLP bar and granted her husband asylum, but she has not been granted asylum, and she was the one suffering from these health issues. It doesn't match. So for those reasons, Your Honors, we'd ask that the court grant the PFR and remand for these issues. Thank you. Thank you. We appreciate the arguments in the case before us, and it is submitted. The court will take a brief recess before considering the next case. Thank you.